*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0329P (6th Cir.)
File Name: 00a0329p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

MARTIN S. MCKAY,
     *Plaintiff-Appellant,*

UNITED STATES OF AMERICA,
     *Intervenor,*

     *v.*

BROOK THOMPSON,
individually and as
Coordinator of Elections,
State of Tennessee; RILEY C.
DARNELL, Secretary of State,
State of Tennessee,
     *Defendants-Appellees,*

CAROLYN JACKSON,
individually and as
Administrator of Elections,
Hamilton County, Tennessee;
CLAUDE RAMSEY, County
Executive, Hamilton County,
Tennessee,
     *Defendants.*

No. 99-6598

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 98-00354—Curtis L. Collier, District Judge.

Submitted:  August 1, 2000

Decided and Filed:  September 18, 2000

Before:  KENNEDY and NORRIS, Circuit Judges; KATZ,
District Judge.[*]

_____

**COUNSEL**

**ON BRIEF:**  Stephanie R. Marcus, UNITED STATES
DEPARTMENT OF JUSTICE, CIVIL DIVISION,
APPELLATE STAFF, Washington, D.C., for Intervenor.
Janet M. Kleinfelter, OFFICE OF THE ATTORNEY
GENERAL, FINANCIAL DIVISION, Nashville, Tennessee,
for Appellee.   Martin S. McKay, Chattanooga, Tennessee,
pro se.

_____

**OPINION**

_____

   ALAN E. NORRIS, Circuit Judge.  *Pro se* plaintiff Martin
S. McKay brought suit in district court against two Tennessee
state election officials and two Hamilton county election
officials, in their official and individual capacities.[1]  McKay

_____

   [*]The Honorable David A. Katz, United States District Judge for the
Northern District of Ohio, sitting by designation.

   [1]The two county officials were dismissed from the case and are not
parties to this appeal.

wishes to stop Tennessee from continuing its practice of requiring its citizens to disclose their social security numbers as a precondition to voter registration. The district court granted summary judgment for defendants. McKay now appeals. Upon de novo review, we affirm for the reasons stated below.

## I.

### A. Statutory Construction of the Tennessee Statute

We begin by noting that the Tennessee code provides that: "[a] citizen of the United States eighteen (18) years of age or older who is a resident of this state is a qualified voter *unless the citizen is disqualified under the provisions of this title* or under a judgment of infamy pursuant to § 40-20-112." TENN. CODE ANN. § 2-2-102 (1994) (emphasis added). Therefore, other provisions of the title may disqualify a citizen for failing to submit a social security number during the registration process. We have been unable to locate a published Tennessee state court decision indicating whether Tennessee law actually requires social security numbers for voter registration.[2]

In the case at bar the Tennessee Coordinator of Elections and the Tennessee Secretary of State, both defendants in this litigation, have made a final administrative determination that Tennessee law requires McKay to disclose his social security number in order to register to vote. We are reluctant to overrule such an interpretation when the meaning ascribed by state officials appears to be reasonable, presents no conflict with previous caselaw, and can be readily challenged by McKay in state court.

---

[2] An unpublished decision, *Carter v. Dunn*, No. 12507 (Tenn. Ct. App. 1976), suggests that social security number disclosure is mandatory.

## B.  *Privacy Act of 1974, Public L. No. 93-579, § 7*

McKay argues Tennessee is prohibited by Public Law 93-579, section 7, an uncodified provision of the Privacy Act, from conditioning the right to vote upon the disclosure of one's social security number.  *See* Privacy Act of 1974, Pub. L. No. 93-579, § 7, 88 Stat. 1896, 1909 (1974).[3]  To support this argument, he relies upon *McKay v. Altobello*, No. 96-3458, 1996 WL 266717 (E.D. La. May 16, 1997), a case he successfully litigated to force Louisiana to allow him to vote without disclosing his social security number.

The district court correctly distinguished *Altobello* on the ground that Tennessee, unlike Louisiana, had maintained "a system of records in existence and operating before January 1, 1975, if such disclosure was required under statute or regulation adopted prior to such date to verify the identity of an individual." Pub. L. No. 93-579, § 7, 88 Stat. 1896, 1909.

---

[3]Section 7 provides that:

(a)(1) It shall be unlawful for any Federal, State or local government agency to deny to any individual any right, benefit, or privilege provided by law because of such individual's refusal to disclose his social security account number.

(2) the [The] provisions of paragraph (1) of this subsection shall not apply with respect to—

(A) any disclosure which is required by Federal statute, or
(B) the disclosure of a social security number to any Federal, State, or local agency maintaining a system of records in existence and operating before January 1, 1975, if such disclosure was required under statute or regulation adopted prior to such date to verify the identity of an individual.

(b) Any Federal, State, or local government agency which requests an individual to disclose his social security account number shall inform that individual whether that disclosure is mandatory or voluntary, by what statutory or other authority such number is solicited, and what uses will be made of it.

has suffered no harm as a result of the court's action.  *See Wallach*, 366 F.2d at 258.[5]

## II.

We affirm the district court's grant of summary judgment.

---

[5]Contrary to McKay's assertions, the technical certification violation occurred only with respect to the Privacy Act and has no relevance to 42 U.S.C. § 1971(c), a provision in the Civil Rights Act of 1964. Defendants asserted the Eleventh Amendment defense only against enforcement of the Privacy Act, and thus the constitutionality of the Civil Rights Act was never "drawn in question" as required to trigger 28 U.S.C. § 2403. The provision in 42 U.S.C. § 1971(c) does not help McKay because the provision merely allows the Attorney General to "institute . . . [a] proper proceeding for preventive relief" instead of requiring certification or permission for intervention.  *Compare* 42 U.S.C. § 1971(c) *with* 28 U.S.C. § 2403(a). Thus, McKay cannot evade his lack of standing for his Civil Rights Act claim by speculating that the Attorney General would have invoked 42 U.S.C. § 1971(c) on McKay's behalf if the case had been properly brought to her attention through certification under 28 U.S.C. § 2403.

Privileges and Immunities Clause of the Fourteenth Amendment affords no protection where Congress has imposed or authorized the infringement).

### F.  *Eleventh Amendment Immunity and Denial of Certification to the Attorney General*

The district court correctly determined that the Eleventh Amendment permits prospective injunctive relief, but not damage awards, for suits against individuals in their official capacities under 42 U.S.C. § 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989).  However, as the United States points out on appeal as an intervening party, the court erred in adopting the defendant Tennessee officials' position that the Eleventh Amendment immunity barred McKay from gaining any relief for his claims under federal law because prospective injunctive relief was possible for him in theory.  *See Lawson v. Shelby County, Tenn.*, 211 F.3d 331, 335 (6th Cir. 2000).  Nonetheless, the district court's error does not affect the outcome of this case in light of our finding that all of McKay's claims are without substantive merit.

McKay also complains he was  prejudiced by the district court's repeated refusal to certify his case to the United States Attorney General under 28 U.S.C. § 2403(a).  Because of defendants' attempted invocation of Eleventh Amendment immunity against the Privacy Act claim, certification was arguably not discretionary for this case and should not have been delayed until the appellate stage of litigation.  *See* 28 U.S.C. § 2403(a); *Jones v. City of Lubbock*, 727 F.2d 364, 372 (5th Cir. 1984); *Wallach v. Lieberman*, 366 F.2d 254, 257 (2d Cir. 1966).  However, we decline to hold that the district court was without jurisdiction on the basis of a technical violation of the 28 U.S.C. § 2403 certification requirement because McKay's claims lack merit on their face; therefore he

Tennessee enacted its statute requiring social security numbers for voter registration in 1972.  The court also correctly concluded that when McKay failed to respond to the motion for summary judgment, he defaulted on his duty to produce affirmative evidence capable of raising a material question of fact about whether the state had a "system of records" in effect prior to the enactment of the Privacy Act.  *See, e.g., Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (discussing nonmovant's affirmative burden).  We decline to entertain the arguments regarding other material questions of fact raised for the first time in McKay's reply brief.  *See United States v. Jerkins*, 871 F.2d 598, 602 n. 3 (6th Cir. 1989).

### C.  *National Voter Registration Act, 42 U.S.C. § 1973gg-3(c)(2)(B)*

McKay also points to section 2-2-116 of the Tennessee state code, which requires disclosure of a social security number as a pre-condition to voter registration.  *See* TENN. CODE ANN. § 2-2-116 (Supp. 1999).  He argues that this provision violates the National Voter Registration Act ("NVRA") because a social security number is not essential to accomplishing the limited permissible purposes identified in 42 U.S.C. § 1973gg-3(c)(2)(B).  According to McKay, 42 U.S.C. § 1973gg-3(c)(2)(B) permits the state to only "require the minimum amount of information necessary" to prevent duplicate voter registration and determine whether he is eligible to vote.

The district court properly rejected McKay's argument.  The NVRA does not specifically forbid use of social security numbers.  As previously discussed, the Privacy Act contains a more specific "grandfather" provision that Congress intended to survive the more general provisions of the NVRA.  *See Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976) ("It is a basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum.").

*D.  Civil Rights Act of 1964, 42 U.S.C. § 1971(a)(2)(B)*

Count three of McKay's complaint alleged a violation of 42 U.S.C. § 1971(a)(2)(B), a provision of the Civil Rights Act of 1964.  He argues that his social security number was not "material" to determining his qualification for voting, and therefore his omission of that information cannot be grounds for refusing his registration.  The district court correctly dismissed this claim for lack of standing.  Section 1971 is enforceable by the Attorney General, not by private citizens. *See* 42 U.S.C. § 1971(c); *Willing v. Lake Orion Community Sch. Bd. of Trustees*, 924 F. Supp. 815, 820 (E.D. Mich. 1996).

*E.    Constitutional Claims as Enforced Pursuant to 42 U.S.C. § 1983*

McKay asserts five constitutional claims in support of his 42 U.S.C. § 1983 action.

We reject McKay's first claim that his fundamental right to vote was unconstitutionally burdened by the social security number disclosure requirement. *See Greidinger v. Davis*, 988 F.2d 1344, 1352-54 & n.10 (4th Cir. 1993) (indicating that Virginia's voter registration scheme would not violate the fundamental right to vote if its scheme had merely provided for receipt and internal use of the social security number by Virginia electoral officials).

We also reject McKay's second claim that the enforcement of section 2-2-116 of the Tennessee state code unconstitutionally infringed upon his First Amendment right to free exercise of religion, as incorporated by the Fourteenth Amendment, by forcing him to violate his religious beliefs in order to vote.[4]    A state law that is rationally related to a

---

[4]According to McKay, the biblical Book of Revelation, chapter 13, verses 16 through 18, warns against government use of universal identifiers as a condition for engaging in commerce or other vital activities such as voting.

legitimate state purpose will be upheld against a free exercise claim, even in a "hybrid" situation involving other fundamental rights such as voting, so long as the law is generally applicable, not aimed at particular religious practices, and free of a system of particularized exceptions. *See Employment Div. v. Smith*, 494 U.S. 872, 877-78 (1990); *Kissinger v. Board of Trustees*, 5 F.3d 177, 179 (6th Cir. 1993). McKay's reliance upon *Leahy v. District of Columbia*, 833 F.2d 1046 (D.C. Cir. 1987), is misplaced because that case utilized the least restrictive means/compelling state interest standard subsequently overruled by *Smith*.  *See City of Boerne v. Flores*, 521 U.S. 507, 512-14 (1997).

McKay claims that the Tennessee statute violates the Privileges and Immunities Clause of Article IV of the Constitution.  See U.S. CONST. art. IV, § 2, cl. 1.  This clause requires only that states give to citizens of every other state the same privileges and immunities that their own citizens enjoy.  *See Hague v. Committee for Indus. Org.*, 307 U.S. 496, 511 (1939).  Defendants did not discriminate against McKay because everyone, whether a state citizen or not, was required to comply with the voter registration laws in order to vote in Tennessee.

McKay asserts he was deprived of his right to vote without procedural due process of law, a violation of the Fifth and Fourteenth Amendments, because he was disqualified as a voter without having been properly convicted of a crime.  He also alleges a violation of the Privileges and Immunities Clause of the Fourteenth Amendment because his right to vote is unique to national citizenship and bestowed by operation of Constitutional and federal statutory law.  *See Shapiro v. Thompson*, 394 U.S. 618, 667 (1969) (Harlan, J., dissenting); *Slaughter-House Cases*, 83 U.S. (16 Wall) 36, 79-80 (1872).  These claims fail because they are based upon the flawed proposition that Tennessee's social security number disclosure requirement violates a federal statute or deprives him of his constitutional rights of voting and free exercise of religion. *See, e.g., Storer v. French (In re Storer)*, 58 F.3d 1125, 1128 (6th Cir. 1995) (indicating that the